Members of the Jury:

It is now my duty to instruct you on the rules of law that you must follow and apply in deciding this case.  After I complete these instructions and after the attorneys complete the summations, you will go to the jury room and begin your discussion — what we call your deliberation.

You must base your decision only on the evidence presented here.  You must not be influenced in any way by either sympathy for, or prejudice against, anyone.

You must follow the law as I explain it — even if you do not agree with the law — and you must follow all of my instructions as a whole.  You must not single out or disregard any of the instructions on the law.

The fact that a corporation is a party must not affect your decision in any way.  Every person — both a corporate person and a natural person — stands equal before the law and stands equal in a court of justice.  Of course, a corporation can act only through people as the corporation's employees; and, in general, a corporation is responsible under the law for an employee's acts or statements if the act or statement occurs while the employee is acting on behalf of the corporation.

As I said earlier, you must consider only the evidence received during the case.  The term "evidence" includes the testimony of the witnesses, the exhibits, and any stipulation of fact.  Remember that what the lawyers say is not evidence in the case, and remember that you are not bound by the lawyers' recollection of the facts.  It is your own recollection of the evidence that controls.

Also, you should not assume from anything I might have said that I have an opinion concerning the issues in this case.  Except for my instructions to you on the law, you should disregard anything I might have said during the trial and arrive at your own decision about the facts.

In considering the evidence you can make deductions and reach conclusions that reason and common sense lead you to make; and you should not be concerned about whether the evidence is direct or circumstantial.

"Direct evidence" is the testimony of one, such as an eye witness, who asserts actual knowledge of a fact.  "Circumstantial evidence" is proof of a chain of facts and circumstances tending to prove, or disprove, any fact in dispute.  The law makes no distinction between the weight you can give to either direct or circumstantial evidence.

Now, in saying that you must consider all of the evidence, I do not mean that you must accept all of the evidence as true or accurate. You should decide whether you believe what each witness had to say, and you should decide the importance of that testimony. You can believe or disbelieve any witness, in whole or in part. In other words, you should consider all the facts and circumstances in evidence to determine which of the witnesses to believe and what weight to give to that testimony.

In deciding whether you believe a witness, ask yourself a few questions:

1.    Did the witness impress you as one who was telling the truth?

2.    Did the witness have any particular reason not to tell the truth?

3.    Did the witness have a personal interest in the outcome of the case?

4.    Did the witness seem to have a good memory?

5.    Did the witness have both the opportunity and the ability to observe accurately the things about which the witness testified?

6.    Did the witness appear to understand the questions clearly and answer them directly?

7.    Did the witness's testimony differ from other evidence, including the testimony of another witnesses?

You should also ask yourself whether there was evidence tending to prove that the witness testified falsely concerning some important fact or whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that differed from the witness's testimony before you during the trial.

You should keep in mind, of course, that a simple mistake by a witness does not necessarily mean that the witness was not telling the truth to the best of the witness's recollection, because people naturally tend to forget some things or to remember other things inaccurately.  So, if a witness has misstated, you need to consider whether the misstatement was simply an innocent lapse of memory or whether the misstatement was an intentional falsehood; and that may depend on whether the misstatement has to do with an important fact or with only an unimportant detail.

If scientific, technical, or other specialized knowledge might assist the jury in understanding the evidence or in determining a fact in issue, a witness qualified by knowledge, skill, experience, training, or education may testify and may state an opinion.  Typically, a witness of this kind is called an "expert" witness.

But merely because this witness has expressed an opinion does not mean that you must accept this opinion.  You should judge this witness's testimony like any other testimony.  You may accept it or reject it and give it as much weight as you think it deserves, considering the witness's education and experience, the soundness of the reasons given for the opinion, and all other evidence in the case.

When a witness is being paid for reviewing and testifying concerning the evidence, you may consider the possibility of bias and should view with caution the testimony of such witness where court testimony is given with regularity and represents a significant portion of the witness's income.

The parties agree that certain facts are true.  This agreement is called a stipulation.  You may treat these facts as proved for this case.

A deposition is a witness's sworn testimony that is taken before the trial. During a deposition, the witness is under oath and swears to tell the truth, and the lawyers for each party may ask questions.  A court reporter is present and records the questions and answers.

The deposition of Samantha Jones, taken on May 23, 2017,was presented to you by reading the transcript.  Deposition testimony is entitled to the same consideration as live testimony, and you must judge it in the same way as if the witness were testifying in court.

Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.

During the trial some of you have created notes.  You will have your notes available to you during your deliberation, but you should make use of them only as an aid to your memory, and you should not give your notes precedence over your independent recollection of the evidence.  Neither should you be unduly influenced by the notes of another juror.  Notes are entitled to no greater weight than the memory or impression of each juror as to what the testimony might have been.

In this case it is the responsibility of Ms. James to prove every essential part of her claims by a "preponderance of the evidence."  This is sometimes called the "burden of proof" or the "burden of persuasion."

A "preponderance of the evidence" means an amount of evidence that is enough to persuade you that each of Ms. James's claims is more likely true than not true.

If the proof fails to establish any essential part of a claim or contention by a preponderance of the evidence, you should find against Ms. James. When more than one claim is involved, you should consider each claim separately.

In deciding whether any fact has been proved by a preponderance of the evidence, you may consider the testimony of all of the witnesses, regardless of who called them, and all of the exhibits received in evidence, regardless of who produced them.

If the proof fails to establish any essential part of Ms. James's claims by a preponderance of the evidence, you should find for Intelligent Software Solutions, Inc., as to that claim.

To succeed on the claim in Count I — Florida Civil Rights Act–Sexual Harassment — Ms. James must prove each of the following facts by a preponderance of the evidence:

First: Mr. Bennett harassed Ms. James because of her sex;

Second: The harassment created a hostile work environment for Ms. James;

Third: Ms. James's supervisor knew, or in the exercise of reasonable care should have known, about the hostile work environment;

Fourth: Ms. James's supervisor failed to take prompt remedial action to eliminate the hostile work environment; and

Fifth: Ms. James suffered damages because of the hostile work environment.

A "hostile work environment" created by harassment because of sex exists if:

a. Ms. James was subjected to offensive acts or statements about sex — even if they were not specifically directed at her;

b. Ms. James did not welcome the offensive acts or statements, which means that Ms. James did not directly or indirectly invite or solicit them by her own acts or statements;

c. the offensive acts or statements were so severe or pervasive that they materially altered the

terms and conditions of Ms. James's employment;

d.      a reasonable person — not someone who is overly sensitive — would have found that the offensive acts or statements materially altered the terms and conditions of the person's employment; and

e.      Ms. James believed that the offensive acts or statements materially altered the terms and conditions of her employment.

To determine whether any discriminatory conduct in this case was "so severe or pervasive" that it materially altered the terms and conditions of employment, you should consider all the circumstances, including:

a.      how often the discriminatory conduct occurred;

b.      the severity of the conduct;

c.      whether the conduct was physically or psychologically threatening or humiliating; and

d.      whether the conduct unreasonably interfered with Ms. James's work performance.

A "material alteration" is a significant change in conditions.

Conduct that amounts only to ordinary socializing in the workplace does not create a hostile work environment.  A hostile work environment will not result from occasional horseplay, sexual flirtation, offhand comments, simple teasing, sporadic use of offensive language, or occasional jokes related to sex.  But discriminatory intimidation, ridicule, insults, or other verbal or physical conduct may be so extreme that it materially alters the terms and conditions of employment.

To show that a supervisor, or a person with the authority to receive, address, or report a complaint of harassment, "should have known" of a hostile work environment, a predominance of the evidence must establish that the hostile environment was so pervasive and so open and obvious that any reasonable person in the supervisor's position, or in the position of a person with the authority to receive, address, or report a complaint of harassment, would have known that the harassment was occurring.

If you find that Ms. James suffered damages because of a hostile work environment and that the damages would not have existed except for the hostile work environment, you may find that Ms. James suffered those damages because of the hostile work environment.

Even if you find that a hostile work environment damaged Ms. James, ISS is not liable for those damages if a preponderance of the evidence proves:

First:    ISS exercised reasonable care to prevent and promptly correct any harassing behavior because of sex in the workplace and

Second:    Ms. James took advantage of ISS's preventative or corrective opportunities, and ISS responded by taking reasonable and prompt corrective action.

To determine whether ISS exercised reasonable care, you may consider whether:

a.    ISS created an explicit policy against harassment because of sex in the workplace;

b.    ISS communicated the policy to its employees; and

c.    the policy provided a reasonable process for Ms. James to complain to higher management.

As you consider the issues, recall that the Florida Civil Rights Act does not shield against harsh treatment in the workplace.  Nor does the statute

require the employer to have good cause for its decisions. The Florida Civil Rights Act is not a vehicle for second-guessing business decisions. The employer may take adverse action against an employee for a good reason, a bad reason, a reason based on erroneous facts, or no reason at all, so long as its action is not for a discriminatory reason.

In Count II — Florida Civil Rights Act–Retaliation — Ms. James claims that ISS retaliated against Ms. James because she took steps to enforce her lawful rights under the Florida Civil Rights Act.

Laws that prohibit discrimination in the workplace also prohibit an employer from taking any retaliatory action against an employee because the employee has asserted rights or made complaints under those laws.

An employee may make a discrimination complaint as a means to enforce what she believes in good faith to be her lawful rights.  So, even if a complaint of discrimination against an employer is later found to be invalid or without merit, the employee cannot be penalized in retaliation for having made such a complaint if you find that the employee made the complaint as a means of seeking to enforce what the employee believed in good faith to be her lawful rights.  To establish "good faith," however, it is insufficient for Ms. James merely to allege that her belief in this regard was honest and bona fide; the allegations and the record must also establish that the belief, though perhaps mistaken, was objectively reasonable.

To succeed on the retaliation claim in Count II, Ms. James must prove each of the following facts by a preponderance of the evidence:

| | |
|---|---|
| First: | Ms. James engaged in a protected activity; |
| Second: | ISS then took an adverse employment action; |
| Third: | ISS took the adverse employment action because of Ms. James's protected activity; and |
| Fourth: | Ms. James suffered damages because of the adverse employment action. |

"Protected activity" includes a complaint about sexual harassment if the complaint is based on a good-faith, reasonable belief that sexual harassment occurred. A "good faith" belief is a reasonable and honest belief under the circumstances even if the belief was mistaken.

An adverse employment action — in this instance, termination — occurs "because of" protected activity if the protected action was the main reason for the termination, that is, if the termination would not have occurred otherwise.

ISS claims that the termination occurred for another reason, and an employer may terminate the employment of an employee for any other lawful reason, good or bad, fair or unfair. You must not second guess that decision, and you must not substitute your own judgment for the employer's — even if you disagree.

Count III claims a violation of the Florida Private Whistle-Blower Act. To succeed on Count III Ms. James must prove each of the following facts by a preponderance of the evidence:

|  |  |  |
|---|---|---|
| First: | Ms. James engaged in a protected activity; |
| Second: | ISS then took an adverse employment action; |
| Third: | ISS took the adverse employment action because of Ms. James's protected activity; and |
| Fourth: | Ms. James suffered damages because of the adverse employment. |

Here, "protected activity" means objecting to a violation of the law.

Under the Florida Private Whistle-Blower Act, an adverse employment action — in this instance, termination — occurs "because of" protected activity if the protected activity was the main reason for the termination, that is, if the termination would not have occurred otherwise.

Again, you must not second guess that decision, and you must not substitute your own judgment for the employer's — even if you disagree.

Count IV claims a violation of the Florida Civil Rights Act – Handicap Discrimination.  Under the FCRA, if a person is qualified to do the job, it is unlawful for an employer to discharge the person because it perceived that person as disabled.

To succeed on Count IV, Ms. James must prove each of the following by a preponderance of the evidence:

> First:      Ms. James was perceived as having a handicap;
>
> Second:   Ms. James was a qualified individual;
>
> Third:     ISS discharged Ms. James; and
>
> Fourth:    ISS took that action because it perceived Ms. James as handicapped.

The first element requires that Ms. James prove by a preponderance of the evidence that she was perceived as having a handicap.  A "handicap" is a physical or mental impairment that substantially limits one or more major life activities.

A "physical impairment" is a condition that prevents the body from functioning normally.  A "mental impairment" is a condition that prevents the mind from functioning normally.

Delusional disorder and paranoia are "handicaps" under the law.

A "major life activity" includes, but is not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working.

Under the FCRA, a person is perceived as disabled not only if the person has a physical disability, but also if the person's employers perceive, even if incorrectly, that the person as unable to perform the job's duties due to a perceived impairment.

Terminating a person's employment "because of" the perception of a handicap means that the perception was the main reason for the termination and that the termination would not have occurred had the perception not been present but everything else had been the same.

Again, an employer may discharge an employee for any lawful reason, good or bad, fair or unfair.  You must not second-guess that decision, and you must not substitute your own judgment — even if you do not agree with the decision to terminate.

If you find for Ms. James on any count, you should award compensatory damages.  When considering the issue of Ms. James's compensatory damages, you should determine what amount, if any, has been proved by Ms. James by a preponderance of the evidence as compensation that is full, just, and reasonable — but no more and no less — for all of Ms. James's damages as a result of the hostile work environment.  Compensatory damages are not allowed as a punishment and must not be either imposed or increased to penalize ISS.  Also, compensatory damages must not be based on speculation or guesswork.

You should consider the following elements of damage and no others, to the extent you find that Ms. James has proved them by a preponderance of the evidence:

       a.     net lost wages and benefits to the date of your verdict and

       b.     emotional pain and mental anguish.

To determine the amount of Ms. James's net lost wages and benefits, you should consider evidence of the actual wages she lost and the monetary value of any benefits she lost.

To determine whether and, if so, how much Ms. James should recover for emotional pain and mental anguish, you may consider both the mental and

physical aspects of injury — tangible and intangible.  Ms. James does not have to introduce evidence of a monetary value for intangible things like mental anguish.  You must determine what amount will fairly compensate her for those claims.  There is no exact standard to apply, but the award should be fair in light of the evidence.

If you find for Ms. James on either Count I, Count II, or Count IV and award her compensatory damages, you can consider an award of punitive damages.  The purpose of punitive damages is not to compensate Ms. James but, instead, to punish ISS for wrongful conduct and to deter similar wrongful conduct.

You can award punitive damages only if a preponderance of the evidence proves that an employee of ISS, acting in a managerial capacity, acted either with malice or with reckless indifference to Ms. James's protected rights.

There is no bright-line rule about which employees act in a managerial capacity.  You must determine whether an employee acted in a "managerial capacity" based on the type of authority ISS gave the employee and the amount of discretion that the employee had in what was done and how it was accomplished.

To show that ISS acted with malice, Ms. James must show that an employee acting in a managerial capacity knew that the law prohibits discrimination and discriminated against Ms. James anyway.  To show that ISS acted with reckless indifference to Ms. James's protected rights, Ms. James must show that an employee acting in a managerial capacity acted with

serious disregard for whether the conduct violated the law.  Either malice or reckless indifference is sufficient to warrant an award of punitive damages.

An employer may not be held liable for punitive damages because of discriminatory acts on the part of its managerial employees where the managerial employees' acts are contrary to the employer's good faith efforts to comply with the law by implementing policies and programs designed to prevent unlawful discrimination in the workplace.  However, the mere existence of policies prohibiting discrimination does not preclude punitive damages if the policies are ineffective.

In determining whether to award punitive damages, you may consider factors such as:

- whether ISS engaged in a pattern of discrimination toward its employees;

- whether ISS acted spitefully or malevolently;

- whether ISS showed a blatant disregard for civil legal obligations;

- whether ISS failed to investigate reports of discrimination;

- whether ISS failed to take corrective action concerning discriminatory acts or comments by its employees; and

- whether the person accused of discrimination was included in the employer's decision making process concerning Ms. James's discharge.

If you find that punitive damages should be assessed against ISS, you may consider the evidence regarding ISS's financial resources in fixing the amount of such damages.

Of course, the fact that I have given you instructions about damages should not be interpreted in any way as an indication that I believe that Ms. James should, or should not, prevail in this case.

Any verdict you reach in the jury room must be unanimous.  In other words, to return a verdict you must all agree.  Your deliberation will be secret; you will never have to explain your verdict to anyone.

It is your duty as jurors to discuss the case with one another in an effort to reach agreement if you can do so.  Each of you must decide the case for yourself, but only after full consideration of the evidence with the other members of the jury.  While you are discussing the case do not hesitate to re-examine your own opinion and change your mind if you become convinced that you were wrong.  But do not give up your honest beliefs solely because the others think differently or merely to get the case over with.

Remember, that in a very real way you are judges — judges of the facts. Your only interest is to seek the truth from the evidence in the case.

When you get to the jury room, choose one of your members to act as foreperson.  The foreperson will direct your deliberations and speak for you in court.  A form of verdict has been prepared for your convenience.

[Explain verdict]

You will take the verdict form to the jury room and when you have reached unanimous agreement you will have your foreperson fill in the verdict form, date and sign it, and then return to the courtroom.

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the marshal who will bring it to my attention.  I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally.  I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.